## KURN et al. v. STATE.

No. 26301.   Oct. 29, 1935.

Rehearing Denied Dec. 24, 1935.

J. W. Jamison, Cruce, Satterfield & Grigsby, and W. T. Stratton, for appellants.

Holmes Baldridge and Arthur Holloway, for appellee.

PER CURIAM. On December 7, 1934, J. M. Kurn and John G. Lonsdale, trustees of St. Louis-San Francisco Railway Company, filed an application with the Corporation Commission of Oklahoma, requesting permis-

sion to discontinue the service of regular agent in the station at Le Flore, Okla., and to substitute a merchant agent and caretaker at said point. This application was based upon the allegation that the revenues derived from the business handled at said station were insufficient in volume to justify the maintenance of a full time agency at said station, and that a merchant agent or caretaker would afford adequate and reasonable service to the public in the business conducted at said station. After hearing all of the evidence offered by the railway company and protesting citizens, the Commission made certain findings and promulgated an order on the 6th day of February, 1935, the essential portions of which are as follows:

"That the net revenues from the Le Flore station, for the 21 month period beginning January, 1933, and ending September 30th, 1934, after the payment of operating expense, including the salary of the agent and station expense, and including revenues attributable to the Le Flore station by virtue of the hauling of company ties, amounts to the sum of $2,690.20.

"2. That the trade territory in and around Le Flore, Okla., embraces a rich agricultural community, which, in normal times, will, no doubt, afford the company a profitable freight business.

"3. That the lack of accessibility to LeFlore, by virtue of its location in a mountainous region, is an important circumstance which should be considered in determining the reasonableness of the company's application herein.

"4. That the nearest open stations, in the event the application herein is granted, would be Wister, a distance 18 miles and Talihina, a distance of 28 miles, over and through the Winding Stair Mountains.

"5. That the closing of the station at Le Flore would result in the surrender of the company's business to truck competition, and that recapture of such business by the railroad, at a future date, would be remote.

"7. That the application of J. M. Kurn and John G. Lonsdale, trustees for the St. Louis-San Francisco Railway Company, for permission to close the company's station at Le Flore, Okla., and substitute for the regular agent at that place a caretaker, should be denied without prejudice."

Thereupon the Commission denied the application.

The trustees of the railway company appeal to this court and make six assignments of error, which may be summarized as follows: That the findings and order are contrary to law and the evidence; that the order is unreasonable and unjust and said order deprives them of their property without due process of law. The appellee contends that it was the duty of the railway company to maintain adequate facilities in any event, and that the relationship between a service and expense is only a relative factor and is not applicable where a loss on the line or division is not shown.

The evidence discloses substantially the following state of facts: That the town of Le Flore is located approximately 16 miles south of Wister and 16 miles north of Talihina by rail and about 20 and 28 miles, respectively, by highway; that the two towns above named are the first open stations each way, and that the town is located about 8 miles south of highway No. 271, is situated in a mountainous section, and is rather difficult of access; that the town has a population of approximately 400, and in its trade territory it has some three or four thousand; that the principal businesses conducted in the town are cotton gin, three general stores, doctor's office and barber shop; that the town was served by two passenger trains and one freight train each day, all of which were day trains; that the station was not an operating station and as far as the operation of the road was concerned did not require a regular agent; that the business done at the station does not require the services of an agent for more than one or two hours a day; that during a period of 21 months, beginning January 1, 1933, and including the month of September, 1934, the total gross revenue from inbound and outbound freight amounted to the sum of $8,730.49, of which amount the sum of $4,748.50 represented a bookkeeping revenue of company ties, and that tickets sold during the same period amounted to the sum of $475.16; that the total gross revenue less the revenue for company ties and properly chargeable to said station under the 50 per cent. rule was $2,210.57 for the entire period, and that the operating expense of the station for the same period amounted to the sum of $1,912.62, of which amount the sum of $1,819.60 was for full time agent's salary. The evidence further shows that the business attributable to company ties brought in no actual revenue and required no agent in handling the same. The evidence further shows that a merchant agent or caretaker at said station would be able to provide service to the public at the time of the running of the trains, and that he would sell tickets, handle baggage and milk and cream and less than carload shipments; that the inconvenience to the general public arising from the change requested

would be by reason of inability to obtain less than carload shipments where the freight was not prepaid, unless the consignee was present at the time the shipment arrived, and also the necessity of requesting cars for carload shipments in advance and sending the waybills by the conductor to the next station for the issuance of bill of lading. The evidence further shows that the outbound carload shipments from this station usually moved over a short period of time during the fall and winter and had not amounted to more than 29 cars during the preceding 21 months, and that the railroad offered to have a full-time man during the period when the heaviest portions of this traffic would move, it appearing from the evidence that this was chiefly cotton.

The Commission, as we have seen, found that the inconvenience to the public would not justify this action on the part of the railroad and assigned as part of its reason the inaccessibility of the town by other modes of travel, and their opinion that the action of the railroad in making the substitution would be to invite additional diversions of business to truck lines.

If the order of the Corporation Commission is reasonable and just, then it was in their jurisdiction as provided by section 18, art. 9 of the Constitution of Oklahoma, in determining whether this order was reasonable and just, and we are to be guided by section 22, art. 9 of the Constitution of Oklahoma, which provides:

"That the action of the Commission appealed from shall be regarded as prima facie, just, reasonable and correct; but the court may, when it deems necessary, in the interest of justice, remand to the Commission any case pending on appeal, and require the same to be further investigated by the Commission."

However, in construing this section of the Constitution, this court has held:

"The prima facie presumption of the reasonableness, justness and correctness of an order of the Corporation Commission, obtaining by reason of section 22, art. 9 of the Constitution, applies only to the facts found by the Commission or established by evidence upon which the Commission failed to make a finding: and where a fact material to the reasonableness, justness and correctness of an order is lacking in the finding of facts made by the Commission and is not supplied by the evidence, the presumption obtaining by reason of said section does not apply, and on review in this court such order cannot be sustained." Chicago, R. I. & P. R. Co. v. State, 117 Okla. 175, 245 P. 656; Atchison,

T. & S. F. Ry. Co. v. State, 23 Okla. 210, 100 P. 11, 21 L. R. A. (N. S.) 908; Atchison, T. & S. F. Ry. Co. v. State, 23 Okla. 510, 101 P. 262; Chicago, R. I. & P. Ry. Co. v. State, 24 Okla. 370, 103 P. 617, 24 L. R. A. (N. S.) 393; St. Louis & S. F. Ry. Co. v. Newell, 25 Okla. 502, 106 P. 818.

The question before the Corporation Commission for determination was not whether the continuance of the Le Flore station as a full-time agency station would afford the patrons thereof a more convenient method of transacting business, but rather whether the substitution of a merchant agent or caretaker would furnish the public with facilities and conveniences reasonable and just. In arriving at a decision the question of costs of the respective services while not controlling was an important factor in determining what was reasonable and just in the premises, for as we have said in the case of St. Louis & San Francisco Ry. Co. v. Newell, 25 Okla. 502, 106 P. 818:

"The facilities afforded at any station to the general public must in a measure be commensurate with the patronage and receipts from that portion of the public to whom the service is rendered."

And, as we have likewise said in the case of Chicago, R. I. & P. Ry. Co. v. State, 24 Okla. 370, 103 P. 617, 24 L. R. A. (N. S.) 393:

"Where the receipts at such stations will not justify the installing of such service, there being eliminated the question of the safety or expedition in the operation of trains, it would be unreasonable to require such service to be installed creating a deficit at such station to be borne by the receipts at a larger station, except in exceptional instances."

Therefore, in determining the validity and reasonableness of the order, consideration must be given to the nature of the facility required to be furnished, and where not necessary to the absolute duties of the carrier, whether the expense occasioned by the furnishing of such additional service or convenience is so out of proportion to the advantage thereby afforded to the public as to be unreasonable or whether it so affects the earnings of the carrier as to impose an unlawful burden thereon. Where it does not clearly appear that the order is unreasonable with regard to the facilities required or the expense involved, and the order is otherwise valid, it will be enforced, and doubts, if any, will be resolved in favor of the order.

In the case now under consideration it is observed that the Commission was actuated

to some extent in making the order in question on the assumption that in normal times a profitable freight business would be forthcoming, and that the location of the station in a mountainous section added to the convenience to the patrons, and further that the substituted service wou'd result in a surrender of the company's business or a large portion of it to truck competition. The Commission failed to find whether the substitute service would be adequate to the needs of the citizens at the present time, and failed to find any necessity for the continuance of the fu'l-time agency on account of exceptional circumstances other than the mountainous location thereof. The evidence, however, does not disclose that the substituted service would not afford the patrons practically the same service as they would have with the full-time agency, but only that a full-time agency would be more convenient. We believe it was the duty of the Commission to determine whether the proffered service was reasonable and adequate, and that if it was then this was a sufficient service on the part of the carrier and the requirement of more would not be an act of regulation, but the substitution of the Commission for the governing officials of the carrier and their judgment as to policy and operation in place of the officials of the corporation. This would be vesting in the Corporation Commission more authority than they are given by the provisions of section 18, art. 9 of the Constitution of Oklahoma, and 'we do not believe that they can exercise authority to this extent. See St. Louis, I. M. & S. Ry. Co. v. State, 28 Okla. 372, 111 P. 396, 114 P. 1096. As we have heretofore said:

"The term 'adequate or reasonable facilities' is not in its nature capable of exact definition. It is a relative expression, and has to be considered as calling for such facilities as might be fairly demanded, regard being had, among other things, to the size of the place, the extent of the demand for trans portation, the cost of furnishing the additional accommodation asked for, and to all other facts which would have a bearing upon the question of convenience and cost." Chicago, R. I. & P. Ry. Co. v. State, 117 Okla. 175, 245 P. 656; St. Louis & S. F. Ry. Co. v. Reynolds, 26 Okla. 804, 110 P. 668; M., K. & T. Ry. Co. v. Town of Wicher, 25 Okla. 586, 106 P. 852; M., K. & T. Ry. Co. v. Town of Norfolk, 25 Okla. 325, 107 P. 172; and see, also, Atl. Coast Line Ry. Co. v. Wharton, 207 U. S. 328, 28 Sup. Ct. 121, 52 L. Ed. 230.

Applying the rules announced in the above authorities to the facts shown herein, we are of the opinion that the order of the Commission denying the application of the carrier to provide a merchant agent at Le Flore, Okla., is neither reasonable nor just, in that it requires the carrier to expend almost the entire cash revenue derived from the station in the maintenance of a full-time agency, a service required neither in the safety, operation, nor expediting of the trains operated by the carrier, and which service is only one of slightly more convenience than the proposed substituted service. We are further of the opinion that the order of the Commission herein attempts to substitute its judgment on a question of business management and policy for that of the officials of the railroad company, and in so far as it does so, that it exceeds its jurisdiction.

The conclusion that we have reached herein does not conflict with the authorities cited by the appellee herein, and is in fact in agreement therewith on the fundamental issue presented by this appeal. We agree with the Supreme Court of New Mexico in the case of Seward v. Denver & R. G. R. Co., 131 P. 980, wherein that court said:

"The Constitution does not confer upon the Corporation Commission the right to arbitrarily establish a station or to require a station agent regardless of the expense entailed upon the company, or the benefits to be derived by the public. It is only authorized to make such an order in this regard, as 'the public interests demand, and as may be reasonable and just.' It is not to consider alone the interests of the public affected, by the order, but must determine whether or not, taking into consideration both the interests of the public and the expense entailed upon the railroad company, the order is just and reasonable. Of course, were the question involved in this case of the safety or expedition in the operation of trains, or the performance of an absolute duty, a different proposition would be involved; but these questions are not involved."

Therefore, the order of the Commission is reversed.

McNEILL, C. J., OSBORN, V. C. J., and BAYLESS, PHELPS, and CORN, JJ., concur.