### LOWDEN et al. v. STATE.

No. 27823.   April 12, 1938.

Rehearing Denied May 10, 1938.

550

W. R. Bleakmore and W. L. Farmer, for plaintiffs in error.

J. B. A. Robertson and S. J. Gordon, for defendant in error.

BAYLESS, V. C. J. Frank O. Lowden and others, trustees for the estate of the Chicago, R. I. & P. Ry. Company, a corporation, applied to the Corporation Commission of the state of Oklahoma for permission to discontinue the regular station agent for the company at Lima, Okla. Notice was given, and, after a hearing, the Corporation Commission refused to grant the application. The company appeals.

The application reads:

"Frank O. Lowden * * * make application for authority and permission to discontinue the regular station agent at Lima, Oklahoma, and respectfully show:

"Authority and permission to discontinue the regular station agent at Lima, Oklahoma, is sought because the revenue earned by said station has steadily declined during recent years to a level where the revenues therefrom are insufficient to pay the expense of maintaining the agent and the cost of operation and taxes.

"That the total gross revenue enjoyed by applicants for twelve months, June, 1937, to May, 1936, inclusive, was $62,409.80. That the salary of the agent at said station for said twelve months was $1,586.40; that the total cost of operating and maintaining said station for said twelve months was $1,616.40. That of the total gross revenue set forth above for said twelve months' period, all except $488.78 thereof represents gross revenue derived from carload shipments. That said carload shipments can be regularly handled by applicants from their first open station. That compared with the revenue earned by said station, the expense of maintaining said agent is unjustifiable.

"Attached hereto and made a part hereof are statements showing the monthly and the aggregate number of carload shipments, total carload freight charges and applicants revenue therefrom, as well as the number of L. C. L. shipments, weight thereof, total L. C. L. revenue and applicants revenue from all L. C. L. shipments forwarded from, and received at, the station at Lima, Oklahoma, during said twelve months' period; Exhibit 3 is a statement of the expense of maintaining and operating the station at Lima, monthly, and in the aggregate for said twelve months' period.

"That the total gross revenue enjoyed by applicants at its Lima, Oklahoma, station has steadily declined since the twelve months' period above, but the expense of maintaining the agent and the cost of operation and taxes has remained constant.

"Wherefore, applicants pray that this Honorable Commission authorize and permit them to discontinue the regular station agent at Lima, Oklahoma."

No written objections were filed, but when the application was called for hearing, the attorneys for the Corporation Commission, an attorney for the union graded school district, and a representative of the Order of Railroad Telegraphers, appeared and entered general objections, and participated in the trial. The only witnesses who gave testimony were employees of the company. Certain documentary evidence was introduced by the company. From this evidence it appears that Lima is a small town located on the main line of the railway between Seminole and Wewoka, Okla. It apparently consists of two parts, one division of the town having 150 inhabitants, 42 dwellings, 3 churches, 2 small stores, and one school building, and the other division having 140 inhabitants, 33 dwellings, 4 school buildings (2 of brick and 2 frame), and 3 stores. It is about six miles east of Seminole. The company's records show that for the period beginning June, 1935, and ending October, 1936, the company received from freight and passenger business arising from the town the total of $1,806.22, and in the same period it spent $2,300.87 in operating and maintaining the station. This resulted in a net loss of $494.65. Applying to the income figures the so-called 50% rule (which credits to any station 50% of certain of its income), the station's earnings were only $903.11, or a loss of $1,397.76. However, it appears that there is a refinery located at Bowlegs, south of the main line of the railway, and the refinery is served by a spur track leaving the main line just west of Lima. No agency is maintained at the town of Bowlegs, and to date all of the

refinery's billings have been handled through the agency at Lima, and this revenue, applying the 50% rule, amounts to a net revenue to the company of $29,679.89. The company showed that this business could be handled as conveniently and as expeditiously from its office at Seminole, and that the company operating the refinery had not opposed the suggestion that such be done.

The primary contentions presented to us relate to the sufficiency of the evidence and law to support the finding and order denying the application.

It occurs to us that the part of the Corporation Commission's order requiring the continuance of the practice of billing the Bowlegs business through the Lima office is a violation of the rights of the company. No objection to a change was made by the shippers served. The showing of convenience and expedition in the handling of this business through the Seminole office is amply sufficient. It occurs to us, therefore, that what was said in the case of Kurn v. State, 175 Okla. 379, 52 P.2d 841, applies here. In that case it had been the practice to handle the business of a refinery through a nearby agency, and it was desired to transfer this business to another nearby agency where the business could be handled with the same convenience and expedition. We held that the decision whether to make such change is a matter of business management wholly within the control of the company, unless there is objection thereto supported by proper showing. In other words, barring objections by the public served, the manner in which the company shall perform services is personal to it and no control or regulation thereof is vested in the Corporation Commission. In this view of the case, the company is at liberty to transfer such business to Seminole at its pleasure, without regard to whether it intends to maintain the Lima office or abolish it. The Corporation Commission is without authority to force the handling of this business through the Lima office simply as a device to enhance its revenues and use this as a reason for refusing to abolish such agency.

Passing now to a consideration of the agency at Lima in the light of the revenue it produces for the company, and the profit or loss attendant upon maintaining the agency, we are confronted with a wholly different question.

The rule with reference to the facilities which a railroad company must furnish to traffic at stations, and even the matter of the maintenance of stations, has been announced heretofore. Chicago, R. I. & P. Ry. Co. v. State, 24 Okla. 370, 103 P. 617; Missouri, K. & T. R. Co. v. State, 24 Okla. 331, 103 P. 613; Kurn v. State, supra, and Kurn v. State, 179 Okla. 440, 66 P.2d 52. While the rule announced has remained uniform, the considerations which confront the railroads and the Corporation Commission in these matters have undergone a great change. Various forms of transportation increasingly compete with the railroads, and this plays an important part in determining what facilities are reasonable for any station.

The record in this case shows that 357 tickets were sold within a given period for a total sum of $182.78—making an average of .513c per ticket. There were two carload shipments received within the period, and none, of purely local origin, forwarded. Within this period there were 12 less-than-carload shipments forwarded, and 140 received. This is a total of 152 small shipments in 365 days, or one every other day. This shows an average of one passenger ticket per day, and one small shipment of freight on alternate days. In addition to the small revenue to be derived therefrom, it is obvious that very little time is required in which to perform the duties connected with the handling of such traffic.

It is to be observed that while appearances were noted on the part of persons or interests served by the railroad in the town, no effort was made to support the formal objections noted at the beginning of the hearing. It is a fair statement to say that there was no legal objection to the granting of the application.

The Order of Railway Telegraphers, an organization representing the agent on duty at this station, was represented, and it offered in evidence a contract between the company and its employees represented by the organization, covering the conditions and wages of such employees. The Corporation Commission stated in its order that, since it was denying the application on other grounds, it would not pass upon the issue thus presented.

This issue has been presented to the court in three other cases, Missouri, K. & T. Ry. Co. v. State, 182 Okla. 134, 76 P.2d 884.

Having in mind the lack of objection to the application, and the showing actually made, we think the Corporation Commission erred when it denied the application. It is therefore ordered that the order of

the Corporation Commission be vacated, and the cause is remanded, with directions to enter an order in conformity herewith.

RILEY, WELCH, CORN, GIBSON, HURST, and DAVISON, JJ., concur. OSBORN, C. J., and PHELPS, J., absent.