ATCHISON, TOPEKA & SANTA FE RY. CO. v. STATE et al.

No. 29999.   Oct. 14, 1941.

*118 P. 2d 202.*

486

Rainey, Flynn, Green & Anderson, George M. Green, and Robert M. Rainey, Jr., all of Oklahoma City, for plaintiff in error.

L. V. Reid, General Counsel for Corporation Commission, S. J. Gordon and Ed White, Assts., for Corporation Commission.

GIBSON, J. This is an appeal by the Atchison, Topeka & Santa Fe Railway Company from an order of the Corporation Commission denying its petition to discontinue the services of a regular station agent at Ripley and substitute therefor a caretaker or merchant agent.

The commission's jurisdiction in such case is conferred by section 18, art. 9, of the Constitution. By the provisions thereof, relating to transportation and transmission companies, the commission "shall require them to establish and maintain all such public service, facilities, and conveniences as may be reasonable and just. . . ." And protestants say that we are required, under section 22, art. 9, of the Constitution, to consider the action of the commission as "prima facie just, reasonable and correct."

By the 1941 amendment of said section 22, the above requirement was omitted, and the provisions of section 20, art. 9, as amended, require that our review of such orders be judicial only (S. B. No. 61, S. L. 1941). But, considering the order even in the manner provided by said section 22 prior to its amendment, we are of the opinion that the evidence was sufficient to remove the presumption of correctness that was said to accompany it.

The prima facie effect of the commission's action aforesaid constitutes merely a presumption that the order appealed from is just, reasonable and correct, and such presumption may disappear or be overthrown by the evidence contained in the record after the same has been reviewed and weighed by this court. But in order to overcome the presumption of correctness, the contrary evidence must be strong and persuasive. Such, in effect, was the holding of this court in Re Intrastate Express Rates, 40 Okla. 237, 138 P. 382; see, also, Lowden et al. v. State, 188 Okla. 106, 106 P. 2d 801. The rule in this regard is stated in Kurn et al. v. State, 175 Okla. 379, 52 P. 2d 841, as follows:

"The prima facie presumption of the reasonableness, justness and correctness of an order of the Corporation Commission obtaining by reason of section 22, art. 9, of the Constitution, is subject to be overcome or rebutted by the facts in the record, as weighed and found by this court in reviewing the same."

The company sought to discontinue the services of the full-time agent for the reason that the receipts at the station as compared with the expense thereof were wholly inadequate to warrant the employment of such agent. The evidence shows that the receipts for the year next preceding the filing of the petition were hardly 50 per cent of the expenses; the receipts were $866.20, while the expense was $1,708.54, including the agent's salary of $1,643.67.

The evidence further shows that the town of Ripley is served regularly by numerous truck and bus lines hauling freight and passengers. The petitioner runs one northbound and one southbound passenger train each day through the town, and there are three freight trains daily.

By its petition the company would employ a caretaker or part-time agent at $15 per month, and would discontinue the services of the regular agent. If its request is granted, telegraph service at Ripley would also be discontinued, and patrons in order to obtain such service would be compelled to call Cushing, Stillwater, or Perkins by telephone to transmit telegrams. Each of these towns is approximately 10 miles distant from Ripley. The depot would be closed a portion of the time and would remain locked or unlocked, depending on the desires of the citizens. Outgoing freight could be left at or in the depot, where trainmen would place it on the proper train, and the freight thereon could not be prepaid, but all shipments would go collect, and all incoming freight would be prepaid. Passengers could board trains as usual and would pay cash fares to the conductor at no additional cost.

The caretaker, if employed, would sell no tickets, and accept no freight. He would be merely what his title implies, a caretaker.

The town of Ripley has approximately 350 inhabitants, or perhaps a few in excess of that number, according to the evidence; and there are 20 business establishments located there. Apparently there is no railroad business that could be termed seasonal like the shipment of wheat or cotton, but the patronage runs generally the same from month to month.

A number of citizens appeared as protestants and witnesses. Their testimony as a whole was mainly that the proposed change would result in inconvenience to them. The inconvenience that might result to such of the witnesses who were patrons of the petitioner is fully set out above.

The commission found that under the proposed caretaker service the petitioner would not render to the town such public service, facilities, and conveniences as are reasonable, just, and adequate to the requirements thereof.

Protestants say that the financial loss to petitioner under the present arrangement is but one circumstance to be considered and not of controlling importance in testing the reasonableness of the order and the type of service to be required at the station; that among the elements to be considered the inadequacy of the proposed caretaker service is of controlling significance.

But the element of expense in cases of this character is of considerable importance in determining whether the proposed public service, facilities, and conveniences are reasonable and just under the surrounding circumstances. Only in cases involving an absolute duty on the part of the railroad is the question of expense of little or no importance. The maintenance of a particular type of service at a station is not an absolute duty. It involves a question of business policy. The commission after due procedure can only say whether the service, facilities, and conveniences to the public to be served were reasonable and just, and expense is an important item in this regard.

This question was fully discussed in Kurn v. State, supra, wherein the fact situation was very similar to the present case. There we said:

"The question before the Corporation Commission for determination was not whether the continuance of the Le Flore station as a full-time agency station would afford the patrons thereof a more convenient method of transacting business, but rather whether the substitution of a merchant agent or caretaker would furnish the public with facilities and conveniences reasonable and just. In arriving at a decision the question of costs of the respective services while not controlling was an important factor in determining what was reasonable and just in the premises for, as we have said in the case of St. Louis & San Francisco Ry. Co. v. Newell, 25 Okla. 502, 106 P. 818: 'The facilities afforded at any station to the general public must in a measure be commensurate with the patronage and receipts from that portion of the public to whom the service is rendered.' "

See, also, Kurn v. State, 179 Okla. 440, 66 P. 2d 52; Lowden v. State, 182 Okla. 549, 78 P. 2d 1059; Lowden v. State, 186 Okla. 654, 100 P. 2d 890; Lowden v. State, 188 Okla. 106, 106 P. 2d 801, supra.

According to the above decisions the railroad in attempting to substitute a caretaker in the place of a regular agent does not seek to escape an absolute duty; no facilities are sought to be removed from the station, but merely an attempt is made to change the character thereof. In the instant case the citizens may suffer some inconvenience by the change in agents, but that inconvenience, according to the evidence, will be mild in comparison to the losses to be suffered by the company if it be forced to retain the regular agent. The facilities demanded here would not be commensurate with the patronage and receipts from that portion of the public to whom the service is to be rendered. And such is the test to be applied. If the caretaker replaces the agent at Ripley, the public may continue to use all means of transportation now existing; only the manner of payment for such service is changed, and in this there is no increase or additional expense worth consideration.

The evidence clearly reveals that said order is not reasonable under the circumstances.

We apply here the law as stated in Lowden v. State, 186 Okla. 654, 100 P. 2d 890, supra, as follows:

"In the performance of an absolute duty by the railway company, the question of expense is not to be considered, but where the duty sought to be enforced is one of additional convenience rather than necessity, the question of expense to the company and relative benefit to the public is the deciding factor and may not be disregarded.

"The facilities to be furnished at any station need only be adequate to the requirement of said station, and should be in a measure commensurate with the patronage and receipts from that portion of the public to whom the service is rendered.

"It is not reasonable to require the maintenance of a full-time agency station when the cost of such service is out of proportion to the revenue derived from that portion of the traveling public benefited thereby, especially where a substitute service may be provided which will afford the same essential service but is less convenient."

The order of the commission is reversed and remanded, with directions to enter an order in conformity with the views herein expressed.

WELCH, C. J., CORN, V. C. J., and OSBORN, HURST, DAVISON, and ARNOLD, JJ., concur. RILEY and BAYLESS, JJ., absent.