LOWDEN et al. v. STATE.

No. 30157.   Oct. 14, 1941.

*118 P. 2d 238.*

W. R. Bleakmore, Robert E. Lee, John Barry, and W. L. Farmer, all of Oklahoma City, for plaintiffs in error.

L. V. Reid, General Counsel for Corporation Commission, and S. J. Gordon and R. Maurice Huff, Assts., for the State.

DAVISON, J. This is an appeal by the trustees of the Rock Island Railway Company from an order of the Corporation Commission denying their application for permission to discontinue the services of the railway company's regular station agent in Isabella, Okla.

The plaintiffs in error, defendant in error, and Corporation Commission will hereinafter be referred to as "appellants," "appellee," and "commission," respectively.

The appellants' application was based upon the claim that the railroad company's revenue from business transacted at said station was not sufficient to warrant keeping a "full-time" agent there and at the hearing thereon they proposed to substitute a caretaker for said agent at all times of the year except the months of June and July, during which large amounts of wheat are shipped from said station.

In its order denying the application, the commission, after making various specific findings of fact, concluded that appellants' proposed substitution of a caretaker for a regular agent at Isabella station would not afford such public service facilities and conveniences as are reasonable, just, and adequate, or commensurate with said railway company's patronage and receipts at said station.

The argument advanced in support of appellants' position that the order appealed from is erroneous and should be vacated is divided into two principal parts. In the first of these it is asserted that the maintenance of a regular station agent is not one of the absolute duties of a railway company, but is merely for the additional convenience of the public and can only be required when the public benefit thereby accomplished is commensurate with the expense thereof. The appellee does not reject this proposition as completely incorrect, but its counsel points out that the only significance of whether a particular service is an absolute duty of the railroad or merely one of additional convenience to the public lies in the factors to be considered in determining the reasonableness and correctness of its requirement. Thus it seems to be conceded that in determining the reasonableness and correctness of an order requiring the maintenance of a regular station agent as distinguished from an order requiring a transportation company to fulfill an absolute duty, the cost of same is to be considered, but appellants' argument is criticized as placing too much emphasis on the cost-revenue factor and too little on other facts and circumstances pertaining to public convenience and benefit. It is also pointed out that under the Constitution it is the prerogative of the Corporation Commission to determine the adequacy of the facilities furnished at a railway station in the first instance (M., K. & T. Ry. Co. v. State, 24 Okla. 331, 339, 103 P. 613, 616) and to require railway companies "to establish and maintain all such public service, facilities, and conveniences as may be reasonable and just" (sec. 18, art. 9, Okla. Const.). On behalf of the appellee, our attention is further called to the presumption of reasonableness, justness, and correctness which accompanies such orders on appeal, and it is also urged that the order appealed from herein should be reviewed in the manner provided by Senate Bill No. 61, enacted by the Eighteenth Legislature. Section 1 of said act provides that this court's ". . . review of appealable orders of the Corporation Commission shall be judicial only, . . ." but it is also observed that in amending section 22, art. 9, of the Constitution, section 3 of said act has omitted the requirement of that constitutional provision that "the action of the commission appealed from shall be regarded as prima facie just, reasonable, and correct. . . ." However, since the appellants do not invoke this new law, nor contend that the presumption mentioned should not attend the order involved herein, but apparently take the position

that the evidence they rely upon is sufficient to overcome said presumption, we will consider the order in the manner provided by section 22, supra, prior to its amendment.

Appellants' position in their second proposition to the effect that the order appealed from "is arbitrary, unreasonable, unjust, and contrary to the law and the evidence" is founded upon the premise that according to the evidence the expense of maintaining a regular station agent at Isabella throughout the year is out of proportion to the revenue derived from the public benefited thereby. If the latter contention proves to be correct, then under the decisions of this court the order in question is unreasonable, especially if the evidence reveals that the substitution of a caretaker for a regular agent at the station involved will afford the same essential service but not as much convenience to the public as is now provided.

According to the evidence, Isabella is a small community of no more than 150 inhabitants. Its business establishments consist of one grain elevator, two bulk oil stations, two combination grocery and drygoods stores, and one combination hardware and general store. It is on that part of appellants' railroad known as its "Enid and Anadarko Branch" extending from Enid to Geary, Okla. The only train operating on this branch is a tri-weekly local freight which travels southward one day and northward the next, excluding Sundays, carrying its passengers in a combination baggage and passenger car.

It is pointed out that according to the statistics appellants introduced at the hearing, only five passengers left Isabella on this train during the 16-month period between October 1, 1938, and January 31, 1940. It is convincingly demonstrated that no regular agent is necessary for handling such a small passenger business, and that the substitution of a caretaker for such an agent would provide the same essential service for passengers as is now afforded.

As to the necessity of the services of a regular agent for handling the railway company's freight business at Isabella during June and July of each year, there seems to be no argument, because of the large number of wheat shipments originating there during those months. The appellants urgently insist, however, that it has so little freight business there during the other months of the year that the maintenance of a regular agent at Isabella during those months cannot be justified upon the ground of necessity or convenience to freight shippers. It is pointed out that of the 88 carloads of wheat received and forwarded at Isabella during the 16-month period from October 1, 1938, to January 31, 1940, 77 were shipped from there to Enid by one consignor, the Feuquay Grain Company, and that 56 of these shipments, accounting for 59 per cent of the railway company's total income from its Isabella station during the period, were shipped during the months of June and July. It is recognized that if a caretaker is substituted for a regular agent during ten months of the year, the transportation charges on all freight destined for the Isabella station during that period will have to be prepaid, that all freight shipped out of said station must be sent "C.O.D.", and that bills of lading will have to be procured from an "open" station where a regular agent is maintained. The nearest "open" station is at Okeene, a rail distance of 8.9 miles from Isabella. There is some conflict in the testimony as to whether a caretaker would be able to use the telephone or telegraph facilities of the railway company for ordering freight cars and bills of lading at the Isabella station, because of the rules and regulations of the labor organization to which the railway company's agents belong and the appellee urges us to ignore as hearsay certain testimony of the railroad's division freight agent that, according to the owner of the Feuquay Grain Company, there was no necessity of a regular agent beng maintained at Isabella as far as his company's business was con-

cerned. Disregarding the disputed testimony mentioned, and granting for the sake of argument that consignors of carload shipments at Isabella would have to order cars and bills of lading for themselves, in the absence of a regular station agent there, it does not appear that appellants' proposed substitution of a caretaker for such an agent during ten months of the year will result in any considerable public inconvenience. As already noted, the largest shipper of carload shipments at said station is the Feuquay Grain Company, and only 21 of its shipments over the 16-month period hereinbefore described were made during the 14 months, exclusive of June and July. As further noted, these were all consigned to Enid. The evidence also reveals that said company maintains its headquarters and terminal at the latter city. Without considering the above-described statement of said company's owner, it would seem to be a slight inconvenience, if any, for said company to order the freight cars and bills of lading it needed for its small number of carload wheat shipments, exclusive of those moved in June and July, and to pay the transportation charges thereon, at Enid, rather than at Isabella.

In view of the foregoing and other facts concerning the railway company's freight business at the Isabella station, we think the cost of maintaining a regular agent at said station during ten months of the year is clearly out of proportion to the revenue derived therefrom and the public convenience accomplished thereby. Appellants' statistics for the period from October 31, 1938, to January 31, 1940, further reveal that only 390 l. c. l. (less than carload) shipments were received and forwarded at the Isabella station during the 16-month period. This is less than one such shipment each day. The evidence further reveals that many of such shipments which are forwarded and received at Isabella now are transported by truck, although it also appears that said village or settlement is one-half mile from the nearest hard-surfaced road and

there is no regularly scheduled truck line serving it. The only witness appearing at the hearing against appellants' application who testified concerning l. c. l. shipments stated that all of such shipments he receives come to him with the freight charges prepaid.

The rest of the business the railway company obtained at its Isabella station during the 16-month period hereinbefore described, besides the items already mentioned, consisted of express and other small shipments, from which it derived a total revenue of 67½c per day. Although the records introduced by the appellants reveal that it made a net profit allocable to its Isabella station for the year October 1, 1938, to September 30, 1939, of $2,177.77, almost all of its total expenses at said station for the period consisted of the wages paid the agent, and it further appears that if its net profit for the months of June and July were deducted from its total net income for the year, its net profit for the other ten months would be only $104.62. We think that, under the circumstances, this is entirely too small a profit to justify the railway company in maintaining a regular agent rather than a caretaker at Isabella during such months.

The principal difference that the proposed change would effect in the railway company's service to the traveling public is that passengers embarking on said company's trains at Isabella would pay their fares to the conductor of those trains rather than by purchasing a ticket at the station. In view of this, the relatively slight inconvenience to that portion of the public forwarding and receiving freight shipments at the Isabella station that would result from appellants' substitution of a caretaker for a regular agent at said station during ten months of the year, and the further fact that a large portion of the railway company's revenue from said station during said period is expended in paying said agent's wages, the order appealed from is unreasonable. With respect to that portion of the year which the order in question affects, it is sim-

ilar to the one reversed in Kurn et al. v. State, 175 Okla. 379, 52 P. 2d 841. In that case it was said:

"Applying the rules announced in the above authorities to the facts shown herein, we are of the opinion that the order of the commission denying the application of the carrier to provide a merchant agent at Le Flore, Okla., is neither reasonable nor just, in that it requires the carrier to expend almost the entire cash revenue derived from the station in the maintenance of a full-time agency, a service required neither in the safety, operation, nor expediting of the trains operated by the carrier and which service is only one of slightly more convenience than the proposed substituted service. . . ."

In the above case, we held that in a case like the present one the question of expense to the company and relative benefit to the public is the deciding factor, and further held:

"It is not reasonable to require the maintenance of a full-time agency station when the cost of such service is out of proportion to the revenue derived from that portion of the . . . public benefited thereby, especially where a substitute service may be provided which will afford the same essential service but is less convenient."

The same principles upon which the above case was decided have been followed in an unbroken line of more recent decisions (see Lowden v. State, 188 Okla. 106, 106 P. 2d 801; Lowden v. State, 186 Okla. 654, 100 P. 2d 890; Lowden v. State, 182 Okla. 549, 78 P. 2d 1059; Kurn v. State, 179 Okla. 440, 66 P. 2d 52), and when applied to the facts of this case they impel us to conclude that the order of the Corporation Commission herein reviewed is erroneous. It is therefore reversed for further proceedings not inconsistent with the views herein expressed.

WELCH, C. J., CORN, V. C. J., and OSBORN, GIBSON, HURST, and ARNOLD, JJ., concur. RILEY and BAYLESS, JJ., absent.