350 P.2d 765

**ARIZONA CORPORATION COMMISSION**
and George F. Senner, Jr., E. T. "Eddie"
Williams, Jr., and William T. Brooks, as
members of and constituting said Commission, and the City of Tombstone, a municipal corporation, Appellants,

v.

**SOUTHERN PACIFIC COMPANY, a cor-**
poration, and Railway Express Agency,
Inc., a corporation, Appellees.

No. 6881.

Supreme Court of Arizona.

April 6, 1960.

James F. McNulty, Jr., Bisbee, for appellants.

Evans, Kitchel & Jenckes and Earl H. Carroll, Phoenix, for appellees.

JOHNSON, Justice.

This is an appeal from a judgment which vacated and set aside an order of the Arizona Corporation Commission pertaining to the discontinuance of an agent at the Tombstone railroad station.

The proceedings originated by a petition filed by the Southern Pacific Company, hereinafter called the railroad and Railway Express Agency, Inc., with the Arizona Corporation Commission, hereinafter called the Commission to discontinue the services of an agent and to maintain the station as a non-agency station. The Commission denied the petition, and an action was instituted in the superior court to vacate and set aside its order. The City of Tombstone was granted the right to intervene and from the judgment of the superior court vacating and setting aside the Commission order, appeals have been taken to this Court.

■ The proceedings in the superior court were in the nature of a trial de novo; the court, therefore, was not bound by the rule followed on appeal by this Court that if any reasonable evidence sustains the order of a lower tribunal, an appellate court will not consider and review the weight of the evidence, or the inferences drawn therefrom by the trial court. The superior court had the right to form its own judgment as an independent tribunal as to the conclusions to be drawn from the evidence, subject only to the rule that the burden of proof is on the plaintiff to show by clear and satisfactory evidence that the order of the Commission is unreasonable or unlawful. Corporation Commission of Arizona v. People's Freight Line, Inc., 41 Ariz. 158, 16 P.2d 420. We must therefore determine whether the evidence in the record is sufficient to show that the order of the Commission was unreasonable. Corporation Commission v. Southern Pac. Co., 55 Ariz. 173, 99 P.2d 702.

■ The essential issue is this: does the public good derived from the maintenance of an agency station overcome the loss sustained in maintaining it as such? Illinois Cent. R. Co. v. Illinois Commerce Commission, 397 Ill. 323, 74 N.E.2d 545.

■ In order to utilize the appropriate legal tests, the initial distinction must be recognized between absolute duties imposed on the railroad and incidental services supplied by the carrier. A railroad has the absolute duty to furnish transportation services. State of Washington ex rel. Oregon R. & Nav. Co. v. Fairchild, 224 U.S. 510, 32 S.Ct. 535, 56 L.Ed. 863. Where the application is to discontinue a transportation service, the question of expense is of small importance. Kurn v. State, 175 Okl. 379, 52 P.2d 841; State ex

rel. Utilities Commission v. Atlantic Coast Line R. Co., 233 N.C. 365, 64 S.E.2d 272; Seward v. Denver & R. G. R. Co., 17 N.M. 557, 131 P. 980, 46 L.R.A.,N.S. 242; Atchison, T. & S. F. R. Co. v. State, 189 Okl. 485, 118 P.2d 202. In that contingency, the general rule is that a public utility cannot, because of loss, escape obligations voluntarily assumed; the mere fact that the railroad must make a large expenditure in maintaining the transportation service is not of itself sufficient excuse to abandon. Nor is an expected deficit from continued operation. A railroad may be compelled to continue the service of a branch or part of a line, although the operation involves a loss. This is true even where the system as a whole fails to earn a fair return upon the value of the property. Fort Smith Light & Traction Co. v. Bourland, 267 U.S. 330, 45 S.Ct. 249, 69 L.Ed. 631. And of course utilities may not pick and choose, serving only the portions of the territory covered by their franchises which it is presently profitable for them to serve and restricting the development of the remaining portions by leaving their inhabitants in discomfort without the service which they alone can render. People of State of New York ex rel. New York & Queens Gas Co. v. McCall, 245 U.S. 345, 38 S.Ct. 122, 62 L.Ed. 337.

■ An application to discontinue an agency station, however, is not tantamount to an application to be relieved of performance of an absolute duty. The duty to maintain an agent is at most incidental to the railroad company's primary and absolute duty to furnish transportation services. Petition of Town of Grenville, 46 N.M. 3, 119 P.2d 632; State ex rel. Utilities Commission v. Atlantic Coast Line R. Co., supra; Southern R. Co. v. Public Service Commission, 195 S.C. 247, 10 S.E. 2d 769; Kurn v. State, supra; Atlantic Coast Line R. Co. v. Commonwealth ex rel. State Corporation Commission, 191 Va. 241, 61 S.E.2d 5. It has been said that the maintenance of an agency station primarily involves a question of business policy. Atchison, T. & S. F. R. Co. v. State, supra. It is because of the incidental nature of the services provided that the question of expense assumes often controlling importance. An able statement of the situation before the Commission in this type of case is contained in Petition of Town of Grenville, supra, 119 P.2d at pages 634, 635:

"[The Railway Company's] absolute duty is to transport freight and passengers. It is not its prime duty to provide depots, waiting rooms, station agents, telephone and telegraph facilities. These duties are only incidental to the main purpose of its organization. It might discharge its absolute duties without any of these facilities, by merely stopping its trains at designated places and loading and unloading freight and passengers. When it

is called upon to perform an absolute duty, of course, the question of expense cannot be considered; but, when the duty is only an incident to the main duty, then the question of expense becomes of more importance, and, in determining the question of reasonableness, the revenue derived by the company from the public, for whose accommodation the facility is to be furnished, becomes of importance and must be considered in connection with the public necessity. * * *

"The constitution does not confer upon the Corporation Commission the right to arbitrarily establish a station or to require a station agent regardless of the expense entailed upon the company, or the benefit to be derived by the public. It is only authorized to make such an order in this regard, as 'the public interests demand, and as may be reasonable and just.' It is not to consider alone the interests of the public affected, by the order, but must determine whether or not, taking into consideration both the interests of the public and the expense entailed upon the railroad company, the order is just and reasonable. Of course, where the question involved in this case of the safety or expedition in the operation of trains, or the performance of an absolute duty, a different proposi-

tion would be involved; but these questions are not involved."

In weighing the public convenience on the one hand, and the expense to the railroad of the maintenance of the service, on the other, to determine the prevailing balance, the Commission should consider the following factors: the financial condition of the entire railroad system, Illinois Cent. R. Co. v. Illinois Commerce Commission, 397 Ill. 323, 74 N.E.2d 545; the financial loss, if any, sustained in the maintenance of the agency, Texas & New Orleans R. Co. v. Louisiana Public Service Commission, 235 La. 973, 106 So.2d 438; the fact of substitute services providing the same essential, although less convenient, service, Illinois Central R. Co. v. Illinois Commerce Commission, 399 Ill. 67, 77 N.E.2d 180; the volume of business to be affected and the saving in time and expense to the shipper, State of Washington ex rel. Oregon R. & Nav. Co. v. Fairchild, supra; the character and population of the territory served, Atlantic Coast Line R. Co. v. Commonwealth ex rel. State Corporation Commission, supra; and the proximity to other agency stations, Illinois Cent. R. Co. v. Illinois Commerce Commission, 397 Ill. 323, 74 N.E.2d 545. The crucial point, however, is that it is unreasonable to require the maintenance of an agency station where the cost of the service is out of proportion to the revenue derived from

the portion of the public benefited thereby. Illinois Cent. R. Co. v. Illinois Commerce Commission, 399 Ill. 67, 77 N.E.2d 180. Finally, the maintaining of an uneconomic service resulting in an economic waste cannot be justified or excused by a showing that the service has been in the convenience and necessity of some individual. The convenience and necessity required are those of the public and not of an individual or individuals. Illinois Cent. R. Co. v. Illinois Commerce Commission, 397 Ill. 323, 74 N.E.2d 545.

Tombstone, Arizona, is an incorporated city of about 1,400 population. It is not located on the mainline of the railroad, being served by a branch line which extends from Fairbank to Tombstone, a distance of slightly under ten miles. The railroad presently operates a mixed train (passengers and freight) between Benson and Tombstone, via Fairbank, on Wednesday and Saturday of each week. No passenger revenues were received at the Tombstone agency during the period September 1, 1956 through August 31, 1958. It further appears that the Tombstone agent is not required for operational purposes of the railroad, nor to enhance the public safety. The agent neither sends nor receives train orders. The road between Fairbank and the paved highway, a distance of one-half mile, is a dirt road of general use, although it appears that it is impassable at certain times of the year. The Fairbank station is located on the railroad's main South line which runs from Tucson into Douglas and El Paso. The station is also located at the junction of the Tombstone branch, as well as the junction of a branch line extending from Fairbank to Patagonia. The Fairbank agency is open Monday through Saturday of each week, the agent receiving and transmitting train orders required in the operation of trains on the South line. This agent also acts as the reporting agency for non-agency stations on the Patagonia Branch.

Less then carload (L.C.L.) shipments are shipped into and out of Tombstone by the Southern Pacific Company, via its wholly owned subsidiary truck line, Pacific Motor Trucking Company (P.M.T.). These shipments move on railroad freight bills and the railroad is responsible for the shipments P.M.T. provides free pick-up and delivery service within the Tombstone city limits or to any point within one mile of the station, whichever is greater. The trucking company accepts or delivers prepaid, C.O.D., or collect shipments and this same service will continue if the railroad agency is closed. P.M.T. provides an on-call service to or from Tombstone five days a week. Under this service, the trucking company comes to Tombstone on any day there is a shipment, irrespective of size, to be forwarded or delivered.

The railroad presently provides carload service two days each week on its scheduled train and will continue to do so if the agent is removed at Tombstone. Passenger service also will continue.

In the event the agency is closed, shippers or consignees in the city can call the agent at Fairbank for particular information regarding rates, status of shipments, etc. This will be a toll-free service. Assuming a consignee had a damaged shipment, the agent at Fairbank could be called and he would go to Tombstone to inspect the shipment. Furthermore, if an L.C.L. shipment is damaged, the truck driver delivering the shipment can note the damage on his records, and an additional inspection will not be required.

With the agency closed, the bills of lading can be delivered to the conductor of the train for execution. The railroad will provide also a bill of lading box at the loading ramp at the Tombstone station and the shipper can place his bill in the box for execution by the conductor when the train arrives. The shipper could then pick up the bill at his convenience. This box would be locked, with only the shipper and railroad having a key. An agent is not required to fill out the bill, since the shipper is required to do this by law. The Fairbank agent will notify carload receivers by telephone of the arrival time of cars at Tombstone and will also handle all tracers on shipments en route to Tombstone.

If P.M.T. is unable to deliver an L.C.L. shipment it will be taken to the Fairbank agency and the consignee will be notified. He can then either go to Fairbank to pick up the shipment, or at his request it will be delivered to him the following day by P.M.T.

Additional transportation facilities are available to the shipping public in Tombstone. Arizona Express, Inc., a common carrier of L.C.L. and truckload shipments, maintains scheduled service in Tombstone on Mondays, Wednesdays, and Fridays, and has connections at Tucson for all transcontinental points. Western Greyhound Lines, a division of the Greyhound Corporation, is a common carrier of passengers and express, with two daily scheduled trips through Tombstone in each direction. A commission agent is located in Tombstone and express shipments up to 100 pounds are accepted.

The daily time consumed by the present station agent in the discharge of her duties is about one-half hour.

The railroad, by its application to discontinue the Tombstone agency, seeks to eliminate a $6,000 cost item. While the record indicates an increase in over-all revenue to the railroad from the Tombstone operation, it also indicates a decrease in L.C.L. shipments handled by the agency and a decrease in revenue therefrom. The principal need of an agent is occasioned by less

than carload business. Denton Bros. v. Atchison, T. & S. F. R. Co., 34 N.M. 53, 277 P. 34; Kurn v. State, supra; Louisiana Ry. & Nav. Co. v. Railroad Commission, 146 La. 609, 83 So. 849; Southern R. Co. v. Public Service Commission, supra. It further appears that no more than a mere handful of Tombstone shippers actually avail themselves of the agency services.

▮ Upon a consideration of the record, we are of the opinion that the evidence sufficiently shows that the order of the Commission was unreasonable. The foregoing facts point to the existence of an uneconomic service resulting in an economic waste and one that cannot be justified in the convenience and necessity of a few individuals. As the court held in State ex rel. Utilities Commission v. Atlantic Coast Line R. Co., supra, 64 S.E.2d at 276:

"While on the hearing before the Utilities Commission the principal receiver of freight at Stokes expressed apprehension that inconvenience would result from discontinuance of agency service at that station, this would seem to involve individual rather than public inconvenience, as the same essential service would be retained as to both incoming and outgoing freight though with some inconvenience to the individual shipper, and raises the question whether the court should require the railroad to continue this service at a loss * * * in order to save one or more shippers from inconvenience of the character about which the shipper testified.

"We are inclined to the view * * * that the railroad freight service which will be continued at Stokes if defendant's application be allowed, will measurably provide for the needs and convenience of the public, and that the disparity between the inconvenience resulting to the complaining shipper and the burden now imposed on the railroad tends to negative the conclusion reached below that it was reasonable and just to require the maintenance of agency service at a substantial loss to the applicant * * *."

While we sympathize with Tombstone's strong desire to have the best possible railroad service, but:

"* * * it is to be remembered that, under our system of public control of rates and service, the general public, speaking broadly, loses in cost what it gains in service. So the railroad, in resisting demands for any uneconomic service, really represents the true interest of the general public.

"Upon the facts before us we cannot believe that an agent * * * would earn for the company any considerable part of his pay. Nor do we believe that he would save to the local public nearly as much as the service would cost the company and, ultimately, the general public. The company is asked to perform services which the interested parties can perform for themselves much more cheaply. Compliance with the order would result in economic waste. This will always, in cases of this kind, be an important factor in the problem, and, in the present case, we consider it the most important." Denton Bros. v. Atchison, T. & S. F. R. Co., supra, 277 P. at page 36.

Lastly, it should be borne in mind, that the ruling of the Commission or of this Court on the question of discontinuance of an agency, at any given time, does not amount to an adjudication for the future, but is only a judgment on the circumstances presented ·by the application, and relates only to the time and conditions presented. Application of Thomson, 143 Neb. 52, 8 N. W.2d 552. The unknown course of future events may justify the position taken by Tombstone in the instant matter. For the present, however, we are satisfied that Tombstone, "The town too tough to die", having survived the vicissitudes of Geronimo and the gunfight at the O. K. Corral, is equal to the occasion and will take the loss of its station agent in its stride.

Judgment affirmed.

STRUCKMEYER, C. J., and PHELPS, UDALL, and BERNSTEIN, JJ., concurring