**The ATCHISON, TOPEKA AND SANTA FE RAILWAY COMPANY, Appellant,**

v.

**The STATE of Oklahoma, Appellee.**

**Nos. 56342, 56343.**

Supreme Court of Oklahoma.

Dec. 11, 1984.

Hugh D. Rice, Richard E. Coulson, Rainey, Ross, Rice & Binns, Oklahoma City, for appellant.

Eddie M. Pope, Asst. Gen. Counsel, General Law Div., Okl. Corp. Com'n, Oklahoma City, for appellee.

ALMA WILSON, Justice.

In this consolidated appeal, the Atchison, Topeka and Santa Fe Railway Company [Santa Fe] challenges two orders of the Oklahoma Corporation Commission denying its applications to discontinue assignment of local agents to three small towns. Santa Fe contends the Commission's orders requiring it to maintain full agent services at Burlington and Marland, Oklahoma, and caretaker services at Red Rock, Oklahoma, exceed the jurisdiction and constitutional authority conferred upon the Commission by *Okla. Const.* Art. IX, § 18. Section 18, in pertinent part, provides:

> "The Commission shall have the power and authority and be charged with the duty of supervising, regulating and controlling all transportation and transmission companies doing business in this State, ... and shall require them to establish and *maintain* all *such public service, facilities, and conveniences as may be reasonable and just, ....*" [Emphasis added.]

The Commission's jurisdiction to regulate the specific location from which railroad station agent service is offered to the public was established in *Atchison, T & SF Ry. Co. v. Corporation Commission*, 658 P.2d 479 (Okl.1983), pursuant to the above constitutionally mandated requirement to maintain such *facilities* as may be reasonable and just. However, Santa Fe further urges that assignment of local agents to these location's is not reasonable and just in view of the replacement services provided by its recently developed car location and inventory computer [CLIC] system. Whether or not the CLIC system is an adequate and reasonable substitute for local agency in these towns is, of course, a question of fact.

■ As is appropriate in reviewing an order of the Corporation Commission involving an asserted constitutional violation, this Court will exercise its own independent judgment as to both the law and the facts.[1]

---

1. *Okla. Const.* Art. IX, § 20 provides:

"The Supreme Court's review of appealable orders of the Corporation Commission shall be judicial only, and in all appeals involving an asserted violation of any right of the parties under the Constitution of the United States or the Constitution of the State of Oklahoma, the Court shall exercise its own independent judgment as to both the law and the facts. In all other appeals from orders of the Corporation Commission the review by the Supreme Court shall not extend further than

We will not, therefore, accept as binding the findings and conclusions of the Commission, but will independently weigh the evidence and enter judgment on the merits.

▪ The Burlington, Marland and Red Rock stations were established by Santa Fe in 1916, 1910 and 1895, respectively. Each station was originally staffed by local agents at the initiative of Santa Fe. This method of delivery of services by local agents to the shipping public of these communities was maintained by Santa Fe until recently.

At the time of the proceedings below, the CLIC method of delivery of services to the shipping public had been in effect in Burlington for sixteen months; and in Marland/Red Rock for twelve months. Under this new computer method, customer information for a bill of lading, to order or trace a car, or report damage claims is transmitted to a regional freight office rather than the local agent. The regional office for Burlington is located in Enid, Oklahoma, a distance of 66 miles. Marland and Red Rock are served by the Ponca City regional office, at distances of 13 and 23 miles. The Enid regional offices may be reached by any shipper by dialing a toll free number 24 hours per day, exclusive of a seven hour break on Saturday and Sunday nights. The Ponca City regional office may be reached by any shipper by dialing collect between five o'clock a.m. and twelve o'clock midnight, seven days a week. In sum, Santa Fe submits that its CLIC method of delivery of shipping services is equal, if not superior, to the services formerly provided by a local agent, and that since the implementation of CLIC, local agents in these single elevator grain shipping communities no longer serve a useful function.

At the hearing on the Burlington application, the general manager of the Burlington Cooperative appeared as a protesting witness. He testified as to numerous com-

plaints with the new method of service and the benefits of having a local agent. The protesting evidence is substantially as follows:

—Under the old system, the shipper received the bill of lading back immediately from the local agent. Now, because the document is mailed from Enid, there is a delay in getting funds on the bill of lading.

—Shippers have problems getting through to the Enid office by telephone, and problems hearing over the telephone.

—The calling procedure takes as long, or longer, than actually typing the bill of lading.

—Problems on occasion with rudeness and lack of cooperation on the part of Santa Fe's Enid personnel.

—The contract number gets left off of the bill of lading "quite a few times", and there is no way for the shipper to check it. Consequently, shippers cannot receive "draw" money on carloads.

—Shippers are now asked to do things ordinarily assigned to a local agent, i.e., check numbers on cars and report to the Enid office.

—Local agency is more efficient because the Enid office has many agencies to take care of.

—Unavailability of damage forms.

—Local agents perform safety and health duties which cannot be done from a distant office. The agent inspects trains for safety as they go through and can notify the dispatcher if heavy rains or unusual storms in the area could cause track obstructions.

—Information conveyed by a local agent is more accurate and readily available. Now shippers are "constantly on the phone" to get any information, which creates extra work for personnel during harvest.

to determine whether the Commission has regularly pursued its authority and whether the findings and conclusions of the Commission are sustained by the law and substantial evidence. Upon review the Supreme Court

shall enter judgment either affirming or reversing the order of the Commission appealed from." Also, *see, Southern Pacific Communications v. Corporation Commission,* 586 P.2d 327 (Okl.1978).

—Confusion due to inaccurate car spotting diagrams supplied by CLIC for use over the telephone.

—Shippers can "never depend" on the number of cars they will receive or if there will be a switch under CLIC.

—Car spotting problems under CLIC have increased.

—Since CLIC the number of cars made available to shippers has decreased.

—A local agent does more than just bill cars.

—A local agent provides personalized service; and is condusive to good public relations, but CLIC is not.

—The overall quality of services has diminished under CLIC.

In sum, the Burlington protesting witness submits:

"In 1978, Santa Fe promised country elevators better service if they would do their own billing and ordering of railroad cars. By examining the past six years record, you can see that this has not happened ... we are being inconvenienced and doing Santa Fe's work for them. We need this agent to not only bill, order and release cars, track and when spotting cars to be sure they are in the right position, etc. We do not have the extra personnel to do the agent's job as the train has different daily arrival schedules.... This has always been railroad responsibility and has been passed to us with no rate reduction, and so far, no better service. I feel that by having a local agent in these small towns, they know the needs of the farmers, the elevator personnel and the need of their grain to be shipped. They have more dedication to these people, as customers and friends to be served, than one agent miles away serving a number of towns and each town being just a statistical number."

"There is no substitution such as telephone calls when we need cars, or need cars billed, or if something has gone wrong, as having the agent on the job."

In response to the complaints of the Burlington protestant, Santa Fe asserts that the shipper's concerns principally involve acclimation to the new mode of doing business. With respect to the operational transition from local agent service to regional electronic service, Santa Fe offers the following evidence:

—While there were frequent problems of getting the proper contract number on the bill of lading, Santa Fe has cooperated with the shipper on this issue and when requested will send the bill of lading directly to the consignee to expedite the shipper's receipt of funds.

—Presently a local agent would also have to go through the Santa Fe computer by calling Enid to locate a car. An agent's access to information would be no better than that of the shipper.

—The shipper merely spends his time on the telephone, rather than typing.

—Requests by the Enid office for assistance from the shipper are not made too often.

—Problems of car availability and spotting also existed when services had been provided by a local agent.

—A repetitive waybill coding will be implemented to expedite the billing process.

—As the Enid personnel gains experience errors will be minimized.

—An agent has no control over the routing of cars.

—Damage claims have been minimal.

Santa Fe further maintains that the inconvenience, if any, to the shipper at Burlington is trivial in comparison with the saving to the railroad from the elimination of the local agent. The evidence discloses that the Burlington station operated at a net profit of $4,101.63, between October 1977 and December 1979, but that by removing the local agent, the railroad would have saved $55,142.99 for that same period. The number of cars handled at Burlington over the period indicated totalled 1,578. Due to the unavailability of requested cars, the number of railway cars forwarded by Burlington, beginning in 1976, declined sig-

nificantly. By 1979, of necessity, 50% of the Burlington wheat harvest (1,000,000:00 bu.) was shipped by truck although railway shipment is preferred. However, the railroad testified that car availability is handled on a system wide basis and that it had no intention of abandoning the Burlington line.

At the hearing on the Marland/Red Rock application, Santa Fe also cited its new CLIC system, discussed supra, as grounds to terminate the local agent services in these towns.

Prior to the institution of CLIC, the customary shipping services were extended to the dualized Marland/Red Rock stations by a single agent who spent a part of each day at Red Rock and a part of each day at Marland. Under the CLIC system the shipping services to the grain elevator in each town and the Oklahoma Gas and Electric plant in Red Rock originate from Ponca City. The shipper is presently required to call the Ponca City regional office collect, as opposed to contacting the local agent, to obtain shipping services such as ordering, tracing billing and claim processing.

Arguments[2] against the discontinuance of local station agent were as follows:
—Delay in service, including routine 2-day delay in inspection of wheat, rather than immediate inspection, resulting in loss to the farmer.
—Increased spotting problems attributed to the current absence of a Santa Fe local agent's personal rapport with Santa Fe train crews.
—Difficulty in the placement of cars because the Ponca City office is not familiar with the local situation.
—Telephone expense.
—Journeys to Ponca City to negotiate claims against the railroad.
—Difficulty in getting cars at the proper time.

Santa Fe's witness admitted that spotting problems occurred, but stated that the problem was with the crews. On inquiry, this witness further conceded that when spotting problems occurred the shipper had to get out and actually "muscle" the car around trying to get it into the correct location. The witness, however, did not foresee greater car location problems than were presently experienced. He stated that it was Santa Fe's desire to place the cars where they are supposed to be, although this was a problem.

Santa Fe offered the following additional evidence in support of its Red Rock/Marland application:
—Due to the fact that the service at Red Rock and Marland is for carload shipments only and no less than carloads are received, there are very few damage claims.
—The established procedure for handling damage claims is by collect call to Ponca City. A Ponca City agent could, upon request, travel to Red Rock/Marland to redress damaged shipments, or in regard to spotting claims.
—Since the implementation of CLIC the local agent has no duties. The trains now arrive at times when the agent is not on duty.
—The personnel at Ponca City are specialized in different areas and can handle practically any situation that arises.

Santa Fe also argues that the alternative services are further justified in light of the savings which would result from station agent removal. According to railroad accounting methodology the dualized Red Rock/Marland stations showed a combined $2,301.64 loss over the 31 month period

2. The local legislative representative appearing on behalf of the Red Rock/Marland protestants, apparently through inadvertence, was not formally sworn, although he was subjected to cross-examination by Santa Fe. As provided by Rule 22(j) of the Commission's Rules of Practice his statements are thus accorded the status of argument only. In pertinent part, Rule 22(j) provides that "[a] written or oral statement by or a communication from any person ... may be received without cross examination, but will be considered only as argument, and not as proof of any recitation of facts contained therein."

prior to CLIC.[3] By city, Red Rock was assigned a $4,538 loss, but Marland was accorded a $2,236.36 profit. By eliminating the Red Rock/Marland expenses, Santa Fe reported it would have saved $60,298.98 for the same period. During the periods covered by the evidence, the combined number of carloads attributable to the Red Rock and Marland agency declined from 422 in 1977 to 183 in 1980.

Our consideration of the evidence in each instance above, requires a balancing of the expense to Santa Fe to maintain local agents and the relative necessity and benefit to the public. *See, Atchison, T & SF Ry. Co. v. State*, 189 Okl. 485, 118 P.2d 202 (1941). In *Kurn v. State*, 52 P.2d 841 (Okl.1935) a mere showing that ordered services were more convenient to the shipping public than the proffered substitute services was found insufficient to justify the Commission's denial of substitution, where the substitute services were otherwise just and reasonable. Our inquiry, then, is not simply whether the continuance of local agents in Burlington and Marland/Red Rock would afford the patrons a more convenient method of transacting business, but rather whether the substitution will furnish the public with facilities and conveniences reasonable and just. In accordance with *St. Louis-San Francisco Ry. Co. v. State*, 515 P.2d 233 (Okl.1973), if the substitute service offered by Santa Fe is reasonable and adequate, it is sufficient. Factors relevant to the adequacy and reasonableness of facilities include size, demand, cost of furnishing additional accommodations and all other facts which would have a bearing upon the question of convenience and cost, *Kurn, supra,* including the cost of the service as compared to the revenue derived from that portion of the public benefited thereby, *Lowden v. State*, 189 Okl. 76, 113 P.2d 991 (1941).

Applying these principles to the enumerated evidence, we are convinced that al-though the substituted CLIC service in each instance may be less convenient, and initially less efficient, than agent service, CLIC provides reasonably adequate service in conformity with Santa Fe's duty to maintain such public service, facilities and conveniences as may be reasonable and just.

The order of the Commission is reversed. The applications by Santa Fe for authority to discontinue assignment of local agents in Burlington, Marland and Red Rock is granted.

BARNES, C.J., and HODGES, LAVENDER, DOOLIN and OPALA, JJ., concur.

SIMMS, V.C.J., and HARGRAVE and KAUGER, JJ., dissent.

---

3. Revenue in the amount of $2,561,602 and approximately 1,994 railcars attributed to the OG&E plant were excluded because OG&E did not utilize the services of the local agent. Such

an exclusion where the revenue is generated from activities *not utilizing the station agent* was deemed the correct procedure in *Kurn v. State,* 179 Okl. 440, 66 P.2d 52 (1937).