**RANOLA OIL COMPANY, Appellant,**

v.

**CORPORATION COMMISSION OF OKLAHOMA, and Viersen & Cochran and Harper Oil Company, Appellees.**

No. 61820.

Supreme Court of Oklahoma.

March 22, 1988.

As Corrected March 25, and April 21, 1988.

Barth P. Walker, Walker, Walker & Driskill, Oklahoma City, for appellant.

H.B. Watson, Jr., Richard K. Books, Watson & McKenzie, Oklahoma City, for appellees.

DOOLIN, Chief Justice.

The issue presented in this appeal is whether the acceptance of a bonus in lieu of participation in an oil and gas well pursuant to a forced pooling order operates as an assignment and prevents the bonus taker from participating as a matter of right in subsequent increased density wells.

John R. Wilver [Wilver], was owner of a certain leasehold interest covering 320 acres in the southern half of Section 9, Township 29 North, Range 6 West, Garfield County, Oklahoma. In 1967 the lessees for the northern half of Section 9 were prepared to drill an oil and gas well. Wilver refused to participate in the well. Vierson & Cochran [Vierson] obtained forced pooling order No. 67179 from the Corporation Commission, pursuant to 52 O.S. § 87.1, pooling all of the lessees' interests in the Mississippi Lime formation underlying Section 9. The order required the lessees to either participate by paying their proportionate share of the costs to drill and complete the well or elect to take a bonus of $50.00 per acre as the fair market value of their mineral interests. The order further specified that if no election were made within thirty days, the non-participating lessee had elected to take the $50.00 per acre bonus as compensation. Wilver failed to make an election and protested the order to this Court but subsequently dismissed the protest. In December of 1968 Wilver died. The well was completed and began producing in 1968, two weeks before Wilver's lease was scheduled to expire.

As part of a stockholder's derivative action filed in federal court in 1962 against Wilver, Clara W. Holmes [C.W. Holmes], and Ranola Oil Company [Ranola], a compromise settlement was reached in 1969 in which all oil and gas leases held by Wilver and/or C.W. Holmes would be transferred to Ranola. The subsequent conveyance to Ranola by the Executor of Wilver's Estate failed to transfer the lease covered by forced pooling order 67179. Wilver's will did not list this lease as a specific bequest, and his sister, C.W. Holmes, took the balance of the estate under the residuary clause of the will. Prior to the distribution of the estate, C.W. Holmes created a trust listing as assets of the trust her stock in Ranola and her interest in the estate of Wilver. Presumably the trustee was unaware that the lease in question passed into the trust when Wilver's estate was distributed.

In 1976, 1977 and 1978, Vierson obtained orders from the Corporation Commission to drill increased density wells into the Mississippi Lime formation under Section 9. These three wells are producers and are the subject of the dispute between Ranola and Vierson. Ranola seeks to retroactively participate in the three wells by paying its proportionate share of the drilling costs.

In the summer of 1981, Ranola discovered the lease in question had not been conveyed to them as part of the stockholder's derivative action. Ranola sought a determination from the Corporation Commission of its interests as successors of Wilver in the three increased density wells. Three days later, the trustee for the C.W. Holmes Trust conveyed the lease to Ranola.

The Corporation Commission, in order 253135, denied Ranola the right to retroactively participate in the three wells. The Commission found that order 67179 pooled the unit and not just the borehole, despite the language in order 67169 specifying "the well". Ranola appeals the findings of the Commission on the grounds that the Commission's interpretation of order 67179 is a collateral attack by the Commission on

its own order, that the action of the Commission is an unconstitutional taking of private property for private use in violation of Art. II, § 23 of the Oklahoma Constitution and is a constitutionally impermissible exercise of the police power in violation of due process under the Oklahoma and United States Constitutions.

An appeal from a Corporation Commission order rests solely in the Oklahoma Supreme Court.[1] If the appeal asserts a violation of constitutional rights, the Supreme Court shall exercise its own independent judgment on questions of both law and interpretation of facts.[2] This Court will, however, determine constitutional questions only if necessary to adjudicate the rights of the parties.[3] Since we are able to resolve the issue raised here on other grounds, we do so.

It is axiomatic that a successor in interest to an oil and gas lease can only assert the same quantum of interest as conveyed by its predecessor in interest. To determine what Wilver conveyed to Ranola, it is necessary that we determine the effect on Wilver's leasehold of his election to accept a bonus.

An oil and gas lease does not convey ownership of the oil and gas *in situ* but merely conveys a right to search for and reduce to possession any oil and gas as may be found. Rather than a true lease, it is really a grant *in praesenti* of oil and gas to be captured from underneath the land described during the term of the lease and for so long thereafter as these substances may be found.[4]

We have recently addressed the effect of a mineral interest owner's election to accept bonus payments in lieu of participation in a forced pooling order in *Amoco Production Company v. Corporation Commission.*[5] The facts and issues presented in that case were substantially the same: The non-participating interest owner subsequently sought to participate in newly-drilled wells by arguing the original forced-pool order had pooled interests in a single bore-hole. The owner then reasoned that the bonus it had accepted was a purchase of its interest only in the first hole drilled and that it still owned an interest in oil and gas which might be produced by subsequent wells in the pooled unit. The Court of Appeals (and by adoption, the Supreme Court) did not accept this reasoning and ruled that a forced-pooling order pooled the working interest on a unit-wide basis.

Most germane to the case at hand is the language in *Amoco* which says:

> The original election is based on certain information or lack of information. Good faith elections were made prior to the first well. It is not fair or just to alter the positions of the interest owners after the initial well is drilled. Once an operator relies on the unit that the Corporation Commission creates, new elections deprive the original risk capital investors of rights earned by taking the risk of the initial well. The order of the commission granting a second election is a deprivation of property rights of the initial risk capital investors. They do not recover their just and fair share of the production.

These conclusions are amply supported by our decisions in previous cases where we have found that when an adjoining owner in fee of the mineral interest is forced pooled and elects to take a bonus in lieu of

---

1. *Okla. Const.* art. IX, § 20, cl. 2.

2. *Okla. Const.* art. IX, § 20 cl. 3. *See also, Carter Oil Co. v. State,* 205 Okl. 541, 240 P.2d 787 (1951); *Anderson–Prichard Oil Corp. v. Corporation Comm'n,* 205 Okl. 672, 241 P.2d 363 (1951), *cert. denied,* 342 U.S. 938, 72 S.Ct. 562, 96 L.Ed. 696; *Atchison, Topeka & Santa Fe Ry. Co. v. State,* 692 P.2d 554 (Okl.1984).

3. *Dablemont v. State,* 543 P.2d 563 (Okl.1975); *Schwartz v. Diehl,* 568 P.2d 280 (Okl.1977).

4. *Hinds v. Phillips Petroleum Co.,* 591 P.2d 697, 698 (Okl.1979).

5. —— P.2d ——, Rehearing denied, February 9, 1988, (Okl.1987).

participating in the costs of drilling the well, this election acts as a sale of his leasehold rights.[6] We have also found that the exercise of 52 O.S. § 87.1 in this manner is not unconstitutional but is a proper exercise of the police power.[7] The federal courts have further found that when the Corporation Commission force pools federal oil and gas interests, election of a bonus acts as a transfer of the lessee's title in the lease upon payment of the bonus.[8]

 We have subsequently, however, made a distinction between formations underlying the forced pooled unit. Lessees may participate in the costs of drilling into one formation and elect to accept a bonus in another formation if the Commission's order treats the formations as separate units.[9] Once the period for election designated by the pooling order passes, the property interests of the affected parties are vested and, once vested, cannot be vulnerable to extinguishment.[10]

 We find that acceptance of the bonus acted as an assignment of Wilver's exploratory rights in the Mississippi Lime formation to the operator. The operator's exploratory rights vested when the bonus was paid. The three increased density wells that Vierson drilled under the authority of Commission orders were drilled into the Mississippi Lime formation. Having assigned his exploratory rights in this for-

mation to Vierson, Wilver could assert no right to participate in the subsequent wells. Likewise, his successor in interest, Ranola, can assert no retroactive rights in these wells.

The purpose of forced pooling is to equalize the risk of loss by forcing all of the oil and gas interest owners to choose in advance whether they will share in both the benefits and the risks of oil and gas exploration.[11] Our decision today properly allocates the risks between the bonus taker and the operator whose exploratory rights vested when the bonus was paid.

When Wilver elected to take a bonus of $50.00 per acre for his 320 acre leasehold, he received the fair market value of his lease. Fair market value of an oil and gas lease is defined as "the level at which this interest can be sold, on open-market negotiations, by an owner willing, but not obliged, to sell to a buyer willing, but not obliged, to buy."[12] Hence, the only risk Wilver assumed was that the value of his lease would rise or fall during the period between the time he acquired the lease and when the bonus was paid. By accepting the bonus, Wilver elected not to take the risk of reducing to capture the oil and gas in the Mississippi Lime formation. To allow Wilver's successor in interest to reap the rewards of development while avoiding the risks would be inequitable.

On the other hand, the operator assumed the risk of capture. If the original well

---

**6.** *Anderson v. Corporation Commission*, 327 P.2d 699, 704 (Okl.1958).

**7.** *Wakefield v. State*, 306 P.2d 305, 308 (Okl. 1957), *citing, Anderson, supra* note 6.

**8.** *Texas Oil & Gas Corp. v. Phillips Petroleum Corp.*, 406 F.2d 1303, 1304 (10th Cir.1969), *cert. denied*, 396 U.S. 829, 90 S.Ct. 80, 24 L.Ed.2d 80. *See also, O'Neill v. American Quasar Petroleum Co.*, 617 P.2d 181, 185 (Okl.1980): "[W]hen an owner of a working interest elects not to participate in a unit well, electing rather to accept a bonus or royalty in lieu thereof, that working interest becomes the property of a person authorized to drill the well, and that unit operator is required to pay the bonus." *Citing, Youngblood v. Seewald*, 299 F.2d 680 (10th Cir.1961).

**9.** *C.F. Braun & Co. v. Corporation Commission*, 609 P.2d 1268, 1272 (Okl.1980).

**10.** *Crest Resources v. Corporation Commission*, 617 P.2d 215, 218 (Okl.1980).

**11.** Nesbitt, *A Primer on Forced Pooling of Oil and Gas Interests in Oklahoma*, 50 *Okla.B.J.* 648 (1979). *See generally, Helmerich & Payne, Inc. v. Corporation Commission*, 532 P.2d 419, 421 (Okl.1975); Note: *Oil and Gas: What Interest Does the Operator Obtain From a Non-Participating Party Under a Compulsory Pooling Order?*, 25 *Okla.L.Rev*, 294 (1972); Nesbitt, *The Forced Pooling Order: How Long? How Wide? How Deep?*, 52 *Okla B.J.* 2799 (1981).

**12.** *Miller v. Corporation Commission*, 635 P.2d 1006, 1008 (Okl.1981).

proved to be a dry hole or did not produce in paying quantities, the participants alone assumed that loss. Since the original well was successful, the participants should be permitted to reap the benefits of their venture in the original well and in the three increased density wells. Furthermore, to permit Ranola to retroactively participate in the three increased density wells would divest the operator's vested interest in violation of substantive due process.

Corporation Commission Order No. 253135 is AFFIRMED.

HARGRAVE, V.C.J., and HODGES, LAVENDER, OPALA, ALMA WILSON, KAUGER and SUMMERS, JJ., concur.

SIMMS, J., dissents.