TEXACO INC., a corporation,
Appellant,

v.

INDUSTRIAL COMMISSION OF the
STATE OF NORTH DAKOTA and
Harley Thompson, Appellees.

Civ. No. 890167.

Supreme Court of North Dakota.

Nov. 28, 1989.

Pearce & Durick, Bismarck, and Randle G. Jones, Texaco Inc., Denver, Colo., for appellant; argued by Randle G. Jones. Appearance by William P. Pearce of Pearce & Durick.

Charles M. Carvell (argued), Asst. Atty. Gen., State Land Dept., Bismarck, for appellee Industrial Com'n of the State of N.D.

Dennis Edward Johnson (argued), Watford City, for appellee Harley Thompson.

ERICKSTAD, Chief Justice.

Texaco Inc. appealed from a district court decision affirming a compulsory pooling order issued by the North Dakota Industrial Commission for the development and operation of an oil and gas well in the NE¼ of Section 25, Township 153 North, Range 96 West in McKenzie County. We affirm.

The NE¼ of Section 25 is located in the Keene–Silurian Pool. Texaco holds mineral leases covering $^{29}/_{32}$ of the mineral interests in the NE¼ of Section 25, and Harley Thompson owns an undivided $^{3}/_{32}$ of the mineral interests, which are unleased. On December 10, 1987, Texaco completed a well in the NE¼NE¼ of Section 25. The Commission had previously set the proper spacing unit for the Keene–Silurian Pool at one well per 160 acres, and the 160 acre spacing unit for Texaco's well is the NE¼ of Section 25.

In August 1987 Texaco and Thompson failed to agree to terms for Texaco to lease Thompson's mineral interests in the NE¼ of Section 25 or terms for a joint operating agreement for drilling and operating the well. On July 15, 1988, Thompson applied to the Commission for a compulsory pooling order for the mineral interests in the spacing unit covered by the NE¼ of Section 25. The Commission entered an order pooling all interests in the spacing unit effective from the date of first operations. The Commission's order also required Thompson to "reimburse the operator for [his] proportionate share of the reasonable actual cost of drilling and operating [the] well, plus a reasonable charge for supervision." Texaco appealed to the district court, which affirmed the Commission's order. Texaco has now appealed to this court.

Texaco contends that the Commission erred as a matter of law in ordering compulsory pooling retroactive to the date of first operations. Texaco argues that it is not "just or equitable" for Thompson, "who has contributed nothing to the drilling of the well and has incurred no risk whatsoever throughout the entire extended process of drilling, completing and operating the well," to "now receive a retroactive share of the working interest in all of the oil and gas produced from Texaco's own well located on Texaco's solely owned leasehold." Texaco asserts that in ordering compulsory pooling retroactive to the date of first operations, "the Commission has taken a portion of Texaco's working interest in its own well, drilled on a tract in which Texaco owns 100% of the working interest, and given it to Thompson, resulting in an unlawful confiscation of Texaco's property and a taking of its property without due process of law."[1]

Section 38–08–08, N.D.C.C., authorizes compulsory pooling:

---

1. Although Texaco's argument indirectly raises issues about the constitutionality of this compulsory pooling order, it has cited no authority to support that argument. We have frequently said that a party who attacks a statute on constitutional grounds should bring up the heavy artillery or forego the attack entirely. *E.g., Southern Valley Grain Dealers Association v. Board of County Commissioners*, 257 N.W.2d 425 (N.D. 1977). Nevertheless, the constitutionality of oil and gas conservation legislation, including compulsory pooling, is well established. *E.g., Patterson v. Stanolind Oil & Gas Co.*, 305 U.S. 376, 59 S.Ct. 259, 83 L.Ed. 231 (1939), dismg app for lack of a substantial federal question, 182 Okl. 155, 77 P.2d 83 (1939); *Bandini Petroleum Co. v. Superior Court*, 284 U.S. 8, 52 S.Ct. 103, 76 L.Ed. 136 (1931); *see* Annot. 37 A.L.R.2d 434 (1954); Annot., 78 A.L.R. 834 (1932); 38 Am.Jur.2d § 172, Gas and Oil (1968).

*"38–08–08. Integration of fractional tracts.*

"1.... In the absence of voluntary pooling, the commission upon the application of any interested person shall enter an order pooling all interests in the spacing unit for the development and operations thereof. Each such pooling order must be made after notice and hearing, and must be upon terms and conditions that are just and reasonable, and that afford to the owner of each tract or interest in the spacing unit the opportunity to recover or receive, without unnecessary expense, his just and equitable share."

In assessing whether Section 38–08–08, N.D.C.C., authorizes the Commission to order compulsory pooling retroactive from the date of first operations, we are guided by our well-established rule of statutory construction that statutory provisions must be construed as a whole to determine the intent of the Legislature. *See, e.g., County of Stutsman v. State Historical Society*, 371 N.W.2d 321 (N.D.1985).

Section 38–08–08, N.D.C.C., is part of our Oil and Gas Conservation Act [ch. 38–08, N.D.C.C.], which was enacted in 1953. The Act recognizes the public's interest "to foster, to encourage, and to promote the development, production, and utilization of ... oil and gas ... in such a manner as will prevent waste; ... provide for ... a greater ultimate recovery of oil and gas ... and [protect] ... correlative rights of all owners." Section 38–08–01, N.D.C.C.

■ In furtherance of that public interest the Act modifies the "rule of capture" [2] by authorizing the Commission to set spacing units for a common source of supply

"[w]hen necessary to prevent waste, to avoid the drilling of unnecessary wells, or to protect correlative rights." Section 38–08–07(1), N.D.C.C. A spacing order shall specify the location of the permitted well on the spacing unit in accordance with a reasonably uniform spacing unit. Section 38–08–07(3), N.D.C.C. Subject to limited exceptions, after a spacing unit is established only one well may be drilled upon the unit. Section 38–08–07(4), N.D.C.C. No drilling activities may be commenced until an application for a permit to drill is approved and a permit is issued. Section 43–02–03–16, N.D.A.C.

■ If a wildcat well is drilled on land not covered by a spacing order, the Commission must docket a spacing hearing within thirty days and thereafter issue a temporary spacing order. Section 43–02–03–18(3), N.D.A.C. A temporary spacing order shall remain in force until a proper spacing order is issued, and during the period between the discovery of minerals and the issuance of a temporary spacing order, no drilling permits for an offset well may be issued unless approved by the enforcement officer. *Id.* Thus, as a practical matter, in a spacing unit in which no pooling agreement has been entered, the provisions of the Oil and Gas Conservation Act preclude an owner of a working interest adjacent to a producing well from recovering his minerals by drilling a well on his land.

The Nebraska Supreme Court recognized the effect of that denial when it affirmed an order allowing compulsory pooling retroactive to the date of commencement of

2. Williams and Meyers, 4th ed., Manual of Oil and Gas Terms, p. 519, defines the "rule of capture":

"This rule has been phrased as follows: 'The owner of a tract of land acquires title to the oil and gas which he produces from wells drilled thereon, though it may be proved that part of such oil or gas migrated from adjoining lands.' Hardwicke, 'The Rule of Capture and Its Implications as Applied to Oil and Gas,' 13 *Texas L. Rev.* 391 at 393 (1935).... Under this rule, absent some state regulation of drilling practices, a landowner, however small his tract, or wherever located on the producing structure, may drill as many wells on his land as he pleases and at such locations as meet his fancy, and he is not liable to the adjacent landowners whose lands are drained as a result of such operations. Likewise he may by means of a compression or vacuum pump, increase the production from his well though the result may be to drain his neighbor's property. The remedy of the injured landowner under such circumstances has generally been said to be that of self-help—'go and do likewise.'"

production under a statute similar to our compulsory pooling statute:[3]

> "Under the common law rule of capture, appellees would have been entitled to all oil produced and appellants only remedy would have been to drill its own well. With the adoption of the Oil and Gas Conservation Act, a landowner could no longer so protect his interest. It became necessary to get a drilling permit and the act contemplates that there shall be only one well if that one can adequately pump out the oil in the pool. Here the appellants are entirely dependent for protection on the pooling order allocating to them a share in the production and the costs of production of appellees' well. The several sections of the act consistently stress the protection of correlative rights. They are clearly designed to protect adjoining landowners under whose lands a pool may extend. To do so in a fair, reasonable, and adequate manner, and to permit an adjoining owner to obtain, recover, and receive his just and equitable share, the pooling order may be made retroactive to the time production started and, insofar as costs are concerned, to the start of drilling operations. Unless the order may be made effective retroactively, it may on occasion verge on the confiscatory." *Application of Farmers Irrigation District,* 187 Neb. 825, 194 N.W.2d 788, 791–792 (1972).

■ The Nebraska decision does not mandate retroactive pooling in every case but requires that "[a]ll pertinent factors

... must be considered ... [and the parties' rights must be resolved] upon an equitable basis." *Id., supra,* 194 N.W.2d at 792. Our compulsory pooling statute, like Nebraska's statute, does not mandate retroactive pooling but requires the Commission to balance the competing interests of the mineral owners and operators to achieve a "just and reasonable" result and "afford to the owner of each ... interest in the spacing unit the opportunity ... to receive ... his just and equitable share." Section 38–08–08(1), N.D.C.C.

■ We agree with the Nebraska Supreme Court's rationale that unless the Commission can issue pooling orders retroactive to the date of first operations, an adjoining landowner may not receive his just and equitable share in a pool, thereby confiscating his property without due process. *See also Ward v. Corporation Commission,* 501 P.2d 503 (Okla.1972).[4] We therefore conclude that, giving effect to both the spacing and pooling provisions of ch. 38–08, the Commission may, within the guidelines of Section 38–08–08, N.D.C.C., issue compulsory pooling orders retroactive to the date of first operations.

Accordingly, we review the Commission's decision under the guidelines of that statute, which require a compulsory pooling order to be "just and reasonable" and to "afford to the owner of each ... interest in the spacing unit the opportunity to ... receive ... his just and equitable share." Our review of the Commission's decision is

---

**3.** The statute at issue in that case, Section 57–909, R.R.S.1943, provided, in part:

> "(1) When two or more separately-owned tracts are embraced within a spacing unit, * * * the commission * * * shall be empowered to enter an order pooling all interests in the spacing unit * * *. Each such pooling order * * * shall be upon terms * * * *that are just and reasonable,* and that afford to the owner of each tract or interest in the spacing unit the *opportunity to recover or receive,* * * *, his just and equitable share."* (Emphasis supplied.)

**4.** In *Ward, supra,* 501 P.2d at 507, the Oklahoma Supreme Court said:

> "At the moment production commences, resulting pressure differentials in the common source of supply portend, in greater or less

degree, drainage from all parts of the unit toward the producing unit well. This drainage is occurring from areas where oil and gas lessees are prohibited from doing anything to protect their leased premises from drainage. With the purpose of § 87.1 [Oklahoma's spacing unit statute] to prevent the drilling of unnecessary wells before it, the Commission will not, except in extreme cases, make an exception to the rule that permits one producing well only on each spacing (drilling) unit. To *impose* this denial without granting the right to participate in production of the unit well, as of the time the non-drilling owners were prohibited from drilling, is the taking by the State of their property without due process in violation of the Fourteenth Amendment to the Constitution of the United States."

governed by Section 38–08–14(4), N.D.C.C.,[5] which requires affirmance "if the commission has regularly pursued its authority and its findings and conclusions are sustained by the law and by substantial and credible evidence." In *Amoco Production Co. v. North Dakota Industrial Commission*, 307 N.W.2d 839, 842 (N.D.1981), we said:

> " 'Our review of the factual basis of administrative agency orders is a three-step process: (1) Are the findings of fact supported by substantial evidence? (2) Are the conclusions of law sustained by the findings of fact? (3) Is the agency decision supported by the conclusions of law? [Citations omitted.]

> \*     \*     \*     \*     \*     \*

> " 'This court, however, has indicated its reluctance to substitute its own judgment for that of qualified experts in matters entrusted to administrative agencies.'

> \*     \*     \*     \*     \*     \*

> " 'We have defined "substantial evidence" as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." [Citations omitted.] "[I]t must be enough to justify, if the trial were to a jury, a refusal to direct a verdict when the conclusion sought to be drawn from it is one of fact for the jury." [Citations omitted.] This is something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence. [Citation omitted.]' "

■ In this case, in August 1987, Texaco negotiated with Thompson to lease Thompson's mineral interests in the NE¼ of Section 25 or to execute a joint operating agreement for the well. Those negotiations broke down because Thompson wanted a commitment from Texaco that Texaco would never transfer its interest to a specified company. An order establishing proper spacing for this land was in effect when this well was completed on December 10, 1987. At that time neither Texaco nor Thompson, as an "interested party," had applied for a compulsory pooling order under Section 38–08–08(1), N.D.C.C. Thompson applied for a compulsory pooling order in July 1988, and the order was entered in October 1988. Without a retroactive order, Texaco would receive the benefit of Thompson's minerals from the beginning of operations and Thompson would, as a practical matter, be precluded from recovering his minerals during that time by drilling an offset well. Under these circumstances, we believe the Commission's decision that retroactive pooling was just and reasonable in this case is supported by substantial and credible evidence. We therefore affirm the Commission's decision to allow compulsory pooling retroactive to the date of first operations.

Texaco also argues that Thompson must pay his proportionate share of the expenses of the well before he can share in the production.

■ The Commission order requires Thompson to reimburse Texaco for his proportionate share of the reasonable actual cost of drilling and operating the well, but does not describe how, or when, Thompson is to pay his share of the expenses. This issue was not raised or decided by the Commission. Issues which were not raised before the Commission may not be raised for the first time on appeal to this court. *Amoco Production Co. v. North Dakota Industrial Commission*, 307 N.W.2d 839 (N.D.1981). This issue is therefore premature, and we express no opinion as to the

---

5. In *Amoco Production Co. v. North Dakota Industrial Commission*, 307 N.W.2d 839, 841 (N.D. 1981), we recognized the specific standard of review for orders from the Commission:

   "The standard of review of the district court in reviewing the orders of the Commission is set out in Section 38–08–14(4) of the North Dakota Century Code. This is a specific statute dealing with appeals from the Industrial Commission. The standard of review found in Chapter 28–32, N.D.C.C., the Administrative Agencies Practice Act, is therefore not applicable in this case. *See* § 1–02–07, N.D.C.C." [Footnotes omitted.]

proper method of payment of the expenses for the well.

The district court decision is affirmed.

VANDE WALLE, LEVINE and MESCHKE, JJ., and VERNON R. PEDERSON, Surrogate Justice, concur.

VERNON R. PEDERSON, Surrogate Justice, sitting in place of GIERKE, J., disqualified.