**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

NORTHERN OIL AND GAS, INC.;
NORTHWEST FARM CREDIT
SERVICES, FLCA,

Plaintiffs-Appellees,

v.

CONTINENTAL RESOURCES,
INCORPORATED,

Defendant-Appellant.

No.    17-36023

D.C. No. 1:14-cv-00090-TJC

MEMORANDUM[*]

Appeal from the United States District Court
for the District of Montana
Timothy J. Cavan, Magistrate Judge, Presiding

Argued and Submitted December 4, 2018
Seattle, Washington

Before:  W. FLETCHER, BYBEE, and WATFORD, Circuit Judges.

Continental Resources, Inc. ("Continental"), Northwest Farm Credit

Services, FLCA ("NWFCS"), and Northern Oil & Gas, Inc. ("Northern") dispute

whether Northern or Continental holds the valid lease to property in Richland

---

[*]    This disposition is not appropriate for publication and is not precedent
except as provided by Ninth Circuit Rule 36-3.

County, Montana. On March 24, 2015, Northern filed a complaint against Continental seeking quiet title to the western half of Section 10 and money damages for lost oil and production revenues. The parties filed cross-motions for summary judgment and the district court granted Northern's, holding that Northern held the valid lease because Continental did not begin drilling on the leased premises before its lease expired. Continental then filed a motion for a declaration of law that Northern must participate in the costs of the well. The district court denied Continental's motion, holding Northern could elect whether to participate in the costs of drilling the well. Continental appealed both decisions.

We have jurisdiction under 28 U.S.C. § 1291. The district court had diversity jurisdiction under 28 U.S.C. § 1332(a), and thus we apply Montana law. *In re Cty. of Orange*, 784 F.3d 520, 523–24 (9th Cir. 2015). We review a district court's decision on cross-motions for summary judgment *de novo. Guatay Christian Fellowship v. Cty. of San Diego*, 670 F.3d 957, 970 (9th Cir. 2011).

**1**. Paragraph 16(b) of the Continental Lease stated that the lease would be extended if "during the primary term a portion or portions of the land covered by this lease are pooled . . . by a creation of a unit as defined in Paragraph 3(e)." Paragraph 3(e) defined a "unit" as "a bounded area formed for the purpose of producing oil and gas" and stated that the area could be "described" as a "spacing

unit." On appeal, Continental alleges that the land was pooled because the temporary spacing unit the Board created in 2003 met the definition of a "unit" under Paragraph 3(e). Therefore, it argues, because it began drilling on the eastern half of Section 10, which was pooled with the western half, it extended the lease past its primary term, and the Northern Lease was not valid.

"The interpretation and construction of a contract is a question of law." *Krajacich v. Great Falls Clinic, LLP*, 276 P.3d 922, 926 (Mont. 2012). When interpreting oil and gas leases, "the protection of the interests of the lessor is considered of paramount importance"; therefore, Montana courts "construe oil and gas leases liberally in favor of the lessor and strictly against the lessee." *Moerman v. Prairie Rose Res., Inc.*, 308 P.3d 75, 79 (Mont. 2013) (citations omitted). Regardless whether the temporary spacing unit was a "unit" under Paragraph 3(e), it was not created "during the primary term" of the lease, as required by Paragraph 16(b). Thus the land was not pooled, and Continental did not extend the lease by drilling on the leased premises during the primary term. Therefore, the district court properly held that the Northern Lease was valid.

**2.** Continental argues, alternatively, that the 2014 pooling order should be applied retroactively, pointing to two decisions from other states, *Texaco Inc. v. Industrial Commission of North Dakota*, 448 N.W.2d 621 (N.D. 1989), and

3

*Application of Farmers Irrigation District*, 194 N.W.2d 788 (Neb. 1972). Both North Dakota and Nebraska have pooling statutes nearly identical to Montana's, all of which state that a pooling order must "be made upon terms and conditions that are just and reasonable." *Compare* Mont. Code Ann. § 82-11-202(1)(b) *with* Neb. Rev. Stat. Ann. § 57-909(1) *and* N.D. Cent. Code Ann. § 38-08-08(1). In *Texaco*, the Supreme Court of North Dakota determined whether retroactive pooling was just and reasonable by "balanc[ing] the competing interests of the mineral owners and operators." 448 N.W.2d at 624; *see also Farmers Irrigation Dist.*, 194 N.W.2d at 791–92 (weighing the risks and benefits of retroactive pooling to both parties). Even assuming that Montana would follow these decisions, in balancing the interests of the parties here, retroactive pooling would upset the justified expectations of Northern and NWFCS who, at the time they signed their lease, had no reason to think that a future event could render it invalid. Thus, applying the pooling order retroactively would not accomplish a "just and reasonable" result.

**3.** Lastly, Continental argues that if the Northern Lease is valid, Northern should be judicially estopped from electing a nonconsent position—and therefore be compelled to participate in the costs of the well. We review a district court's decision of whether to apply judicial estoppel for an abuse of discretion. *Milton H. Greene Archives, Inc. v. Marilyn Monroe LLC*, 692 F.3d 983, 992–93 (9th Cir.

4

2012).  Northern did not expressly or impliedly indicate consent to participate in the well and thus should not be judicially estopped from electing a nonconsent position.  *See Ranola Oil Co. v. Corp. Comm'n of Okla.*, 752 P.2d 1116, 1119 (Okla. 1988) ("It is not fair or just to alter the positions of the interest owners after the initial well is drilled." (citation omitted)).  The district court did not abuse its discretion.

**AFFIRMED.**